```
                  UNITED STATES DISTRICT COURT
                   DISTRICT OF MASSACHUSETTS


D. CHARLES DICKOW, as Executor of     )
the Estate of Margaret W. Dickow,     )
                                      )
     Plaintiff,                       )
                                      )   CIVIL ACTION NO.
v.                                    )   09-10786-DPW
                                      )
UNITED STATES OF AMERICA and          )
INTERNAL REVENUE SERVICE,             )
                                      )
     Defendants.                      )
```

MEMORANDUM AND ORDER
August 18, 2010

Plaintiff D. Charles Dickow, as the Executor of the Estate of Margaret W. Dickow, seeks to recover federal estate tax he claims has been erroneously assessed and collected by the Internal Revenue Service ("IRS") for the tax year ending on January 15, 2003. The IRS and the Executor have moved respectively for summary judgment and partial summary judgment over the issue of the timeliness of the Executor's refund request. For the reasons stated below, I will grant the IRS summary judgment.

## I. BACKGROUND

### A. *The Facts*

Margaret W. Dickow died on January 15, 2003. Pursuant to 26 U.S.C. § 6075(a), the IRS Form 706 (United States Estate Tax Return) was due on October 15, 2003, i.e., nine months after Mrs. Dickow's death.

On October 10, 2003, the Executor filed an IRS Form 4768 (Application for Extension of Time to File a Return and/or Pay U.S. Estate Taxes), enclosing a check in the amount of $945,000 for the payment of the estimated tax. The Executor received an automatic six-month extension of time, i.e., until April 15, 2004, to file the estate tax return.

On March 23, 2004, the Executor filed a second IRS Form 4768 requesting for an extension of an additional six-month period, i.e., until October 15, 2004, to file and pay the estate tax return. In an attachment to the form, the Executor noted that he sought a second extension to file the estate tax return because "despite due diligence on his part, he has not received an appraisal of a real estate asset which constitutes a large portion of the Estate." As a result, the Executor concluded that he could not accurately compute the estate tax due. The IRS contends that the Executor's second request was invalid on the ground that the form was altered and incomplete. As basis for this contention, the IRS relies on the fact that the words "REQUEST FOR SECOND EXTENSION" were typed at the top of the form and that the Executor failed to check any box of the form indicating that he was requesting an extension of time under a recognized grounds for doing so.

On April 7, 2004, the IRS denied the Executor's second request for extension of time to file the estate tax return on

the ground that a previous extension had already been granted until April 15, 2004 and that "[b]y law extension of time to file may be granted for no longer than six months." The extension of time to pay was nonetheless approved and the Executor was given until October 15, 2004 to pay the estate tax. It is disputed whether the IRS actually informed[1] the Executor that it had denied his second request for extension of time to file the estate tax return. The Executor therefore contends that he relied on the IRS' silence to conclude that his second request had been granted, thereby justifying his failure to file the estate tax return on April 15, 2004.

Thereafter, on August 16 and October 11, 2004, the IRS sent two delinquency notices to the Executor or his agents, informing him that the estate tax return was overdue. The Executor denies having received such notices. Meanwhile, on September 30, 2004, the Executor mailed an IRS Form 706 (United States Estate Tax Return), in which he requested a refund in the amount of $337,139.81 of the $945,000.00 previously paid to the IRS. This amount was refunded to the Executor by the IRS on November 1, 2004.

---

[1] The Executor contends that he did not learn of the IRS' document denying his second request for extension of time until it was produced at the hearing on the motion to dismiss held on September 24, 2009.

Almost three years later, on September 10, 2007, the Executor mailed an amended IRS Form 706, in which he claimed a refund of $574,953.29 (i.e., the $337,139.81 previously refunded and an additional $237,813.48 that is the subject of the present litigation).  In response, the IRS sent a letter to the Executor on October 15, 2007, denying the request for refund in the amount $239,768.48 (i.e., $237,813.48 plus $1,955.00 paid in connection with a 1998 gift tax).

### B.   *Procedural History*

On May 14, 2009, the Executor filed a complaint in this Court, seeking to recover for federal estate tax in the amount of $237,813.48.  The IRS filed a motion to dismiss for lack of subject matter jurisdiction on July 14, 2009 on the ground that the relief sought by the Executor was barred as untimely under 26 U.S.C. § 6511(b)(2)(A).

While IRS' motion was still pending, the Executor filed a First Amended Complaint on August 21, 2009, alleging a claim for tax refund pursuant to 26 U.S.C. § 6511(a)&(b)(2)(A) (Count I) and equitable estoppel (Count II).  The IRS subsequently filed a second motion to dismiss, claiming, as it did in the first motion, that the Executor's claim for relief was untimely.  I denied IRS' second motion to dismiss on September 24, 2009.  Thereafter, IRS filed its Answer to the Executor's First Amended Complaint.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  The vocabulary of summary judgment is well-settled.  "A material fact is one that would affect the outcome of the suit, while a genuine issue is one for which the evidence would permit a reasonable jury to return a verdict for the nonmoving party."  *Zimmerman v. Puccio*, No. 09-1416, --- F.3d ---, 2010 WL 2901786, at *8 (1st Cir. July 27, 2010).

In ruling on a motion for summary judgment, a court must "make all reasonable factual inferences in the light most favorable to the non-movant."  *Shell Co. (P.R.) Ltd. v. Los Frailes Serv. Station*, 605 F.3d 10, 24 (1st Cir. 2010).  Where, as here, the parties have filed cross-motions for summary judgment and partial summary judgment, the court "must view each motion, separately, through this prism."  *Estate of Hevia v. Portrio Corp.*, 602 F.3d 34, 40 (1st Cir. 2010).  This means that the "court may enter summary judgment only if the record, read in this manner, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Id*.

**III.   DISCUSSION**

The IRS argues that judgment as a matter of law should be granted on two grounds: (A) the Executor is jurisdictionally barred from the relief he seeks because his claim is untimely under 26 U.S.C. § 6511(a)&(b)(2)(A) and (B) the Executor's claim for equitable estoppel cannot provide this Court with jurisdiction over this action; and, even if it could, such a claim would be insufficient as a matter of law. I will address these two questions in turn.

*A.   Timeliness as a Jurisdictional Requisite*

1.   Legal Considerations

28 U.S.C. § 1346(a)(1) gives federal district courts jurisdiction over suits against the United States "for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected." 28 U.S.C. § 1346(a)(1). This provision is only of a jurisdictional nature. *See* United States v. Testan, 424 U.S. 392, 398 (1976). It does not waive sovereign immunity to permit a suit against the government; rather, a separate waiver is required. The waiver of sovereign immunity that allows tax refund suits reads as follows:

> *No suit or proceeding shall be maintained* in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, . . . , or of any sum alleged to have been excessive or in any manner wrongfully collected, *until a claim for refund or credit has been duly filed with the Secretary*, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

26 U.S.C. § 7422(a) (emphasis added).  The requirements applicable to "duly filed" refund claims are contained in 26 U.S.C. § 6511 and the regulations enacted thereunder.

Accordingly, a taxpayer seeking a refund of overpaid taxes must file a refund claim in a timely fashion with the IRS under 26 U.S.C. § 6511.  This section contains two separate provisions for determining the timeliness of a claim for refund.  *First*, § 6511(a) provides a "filing deadline" which requires the taxpayer to file a refund claim "within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid."  26 U.S.C. § 6511(a).  *Second*, § 6511(b)(1)(A) establishes a "look-back period" applicable where the claim is filed within "the 3-year period prescribed in subsection (a)."  26 U.S.C. § 6511(b)(2)(A).  The look-back period requires that the amount of the refund be limited to "the portion of the tax paid within the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return."  *Id.*

The provisions at issue in this case - 26 U.S.C. §§ 6511(a) and 6511(b)(2)(A) - are all jurisdictional in nature, and a tax refund suit that fails to satisfy these provisions must be dismissed for lack of subject-matter jurisdiction.  *See Comm'r v.*

*Lundy*, 516 U.S. 235, 240 (1996) (noting that "the provisions governing refund suits in United States District Court . . . make timely filing of a refund claim a jurisdictional prerequisite to bringing suit"); *see also Zeier v. U.S. I.R.S.*, 80 F.3d 1360, 1364 (9th Cir. 1996) ("Following the Supreme Court in *Lundy*, we hold that § 6511(b)(2)(A) is jurisdictional."); *Porter v. United States*, 919 F. Supp. 927, 934 (E.D. Va. 1996) ("§ 6511(b)(2)(A) establishes a jurisdictional requirement for refund claims in district courts."); *Oropallo v. United States*, 994 F.2d 25, 27 (1st Cir. 1993) (per curiam) (noting that "additional limitations period [of section 6511(b)(2)(A)] effectively bars some of the refund claims which would be unquestionably timely under section 6511(a).") (pre-*Lundy*).

### 2. Did the Executor Satisfy the Jurisdictional Requirements for Bringing a Tax Refund Claim?

There is no dispute that the Executor's claim for refund was filed in accordance with § 6511(a).  Having submitted the estate tax return on September 30, 2004, the Executor timely filed his tax refund claim on September 10, 2007, i.e., within the three-year time period set forth in § 6511(a).  Whether the Executor's suit was "duly filed" therefore depends on whether this suit satisfies the requirements set forth in § 6511(b)(2)(A).  Pursuant to this section, the amount of the refund is limited to "the portion of the tax paid within the [look-back] period, immediately preceding the filing of the claim, equal to 3 years

plus the period of any extension of time for filing the return." 26 U.S.C. § 6511(b)(2)(A).  Since the Executor filed his refund claim on September 10, 2007, he may only recover taxes paid in the preceding three years, i.e., on or after September 10, 2004, plus "any extension of time" the Executor was granted.  It is undisputed that the Executor's first request for a six-month extension of time was automatically granted pursuant to the pertinent tax regulation, Treas. Reg. § 20.6081-1(b), thereby extending the look-back period to March 10, 2004.  What is disputed, however, is whether the Executor's second request for extension of time was granted by the IRS and extended the look-back period by an additional six-month period, i.e., September 10, 2003, beyond the date the tax payment was made.

The crux of this case is therefore whether the Executor's second request for extension was somehow granted by the IRS.  Before determining whether such an extension was granted by the IRS, it is, however, necessary to decide whether the IRS had the authority to grant such request.  If not, even an implicit grant of an extension by the IRS would be irrelevant.  Pursuant to 26 U.S.C. § 6081, "[t]he Secretary may grant a reasonable extension of time for filing any return . . . Except in the case of taxpayers who are abroad, no such extension shall be for more than 6 months."  26 U.S.C. § 6081(a).  Likewise, the pertinent tax regulation provides that "[u]nless the executor is abroad,

-9-

the extension of time may not be for more than six months." Treas. Reg. § 20.6081-1(c).  In this case, there is no allegation that the Executor was domiciled abroad during the relevant period of time.  Rather, the Executor contends that, while the statute and the regulation clearly limit the *duration* of the extension to six-months, neither limits the *number* of extensions that may be granted by the IRS.

While an extension referred to in § 6081(a) is limited to six months, the statute does not explicitly provide that the Secretary may only grant one extension, or that the taxpayer may not receive several extensions, or that the total allowable extensions may not exceed six months. *Estate of La Meres v. Comm'r*, 98 T.C. 294, 320-21 (T.C. 1992).  The regulation, however, is more precise.  When a statute is ambiguous, a court is bound by an agency's regulation containing a reasonable interpretation of the statute at issue.  *See Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984) ("[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.").  Here, the estate tax regulation provides that "[u]nless the executor is abroad, *the* extension of time may not be for more than six months." Treas. Reg. § 20.6081-1(b) (emphasis added).  The regulation plainly restricts the total

allowable extended time period to six months.  This interpretation is consistent with Tax Court decisions holding that only *one* six-month was effectively contemplated under the statute and the former estate tax regulation.  *See Estate of Maltaman v. Comm'r*, No. 3845-95, T.C.M. 1997-110, 1997 WL 90606, at *4 (T.C. Mar. 4, 1997) ("The regulations issued with respect to section 6081(a) provide that the *total allowable* extension of time for filing an estate tax return is 6 months from the original due date of the return.") (emphasis added); *Estate of La Meres*, 98 T.C. at 321 (noting that the estate tax regulation "literally restricts the total allowable extended time to 6 months.").[2]  Likewise, the Internal Revenue Manual provides support for the view that the IRS may only grant *one* six-month extension of time, as it states that "[u]nless the executor is out of the country, the *maximum* extension of time to file is 6 months from the due date of the applicable return."  *See* Internal Revenue Manual § 4.25.2.1.1.2 (2009) (emphasis added).

Also consistent with this interpretation is the language of the IRS Form 4768 (Application for Extension of Time to File a Return and/or Pay U.S. Estate Taxes).  IRS Form 4798 contemplates

---

[2] In *Estate of La Meres* the petitioner, however, reasonably and in good faith relied upon the advice of counsel causing the estate tax return there to be untimely. 98 T.C. 294, 324 (T.C. 1992).  This was considered "reasonable cause" under 26 U.S.C. § 6651(a) for the lack of timeliness in that case.  *Id.*  No § 6651(a) justification is made by petitioner here.  In any event, it would not be applicable in this case.

*only* three types of situations where the taxpayer may request an extension of time to file the estate tax return: (1) the "automatic extension" when the executor is "applying for an automatic 6-month extension to file," (2) the "additional extension" when the executor is "out of the country" and applies "for an extension in excess of 6 months," and (3) the "extension for cause" when the executor has "not filed a request for an automatic 6-month extension and the time for filing such a request has passed."  The Executor's second request for extension does not fall into any of these three categories, which no doubt explains why he did not check any of the applicable boxes of the form but instead merely added the terms "REQUEST FOR SECOND EXTENSION" at the top of the form.

The Executor cannot rely upon the IRS' failure to advise him of the denial to justify his purported conclusion that his second request had been granted where, as here, the IRS clearly did *not* have the authority to issue such extension.  *Cf. Eastman Mach. Co., Inc. v. United States*, 841 F.2d 469, 472 (2d Cir. 1988) ("If it were true that the IRS had *no power* to grant an extension of time to file a return . . ., we would agree with the government that *as a matter of law there could have been no timely filing of Eastman's return*, and summary judgment would have been proper.") (emphasis added).  As a result, only one six-month extension was, and could have been, granted by the IRS.  The look-back period

set forth in § 6511(b)(2)(A) therefore only extended until March 10, 2004 and did not cover the period during which the October 10, 2003 payment was made.

Having found that the Executor has failed to comply with the jurisdictional requirement set forth in § 6511(b)(2)(A), I will grant summary judgment as to Count I in favor of the IRS.

### B.  *Equitable Estoppel as a Relief from Obligation of Timeliness*

The Executor argues that the IRS is equitably estopped from denying his refund claim because the IRS misrepresented that a second extension of time to file the estate tax return had been granted.  The Executor's claim fails as a matter of law for two reasons.

As a threshold matter, the doctrine of equitable estoppel cannot be used to extend the time to file a tax refund claim.  In *United States v. Brockamp*, the Supreme Court addressed whether courts may toll, for nonstatutory equitable reasons, the limitations periods established by § 6511.  519 U.S. 347, 348-54 (1997).  The Supreme Court concluded that:

> Section 6511's s detail, its technical language, the iteration of the limitations in both procedural and substantive forms, and the explicit listing of exceptions, taken together indicate to us that Congress did not intend courts to read other unmentioned, open-ended, "*equitable" exceptions* into the statute that it wrote. There are no counter-indications. Tax law, after all, is not normally characterized by case-specific exceptions reflecting individualized equities.

*Id.* at 352 (emphasis added).  While the doctrines of equitable

-13-

tolling and equitable estoppel are distinct legal theories, *Brockamp* stands against the application by the courts of *all* equitable exceptions to the limitations periods set forth by § 6511. *See Danoff v. United States*, 324 F. Supp. 2d 1086, 1099 (C.D. Cal. 2004) (noting that subsequent to *Brockamp* "courts uniformly have held that equitable principles, including the doctrine of equitable estoppel, *cannot* not toll statutes of limitation in tax refund suits"); *Video Training Source, Inc. v. United States*, 991 F. Supp. 1256, 1263 (D. Colo. 1998) ("*Brockamp* proscribes all 'equitable' exceptions to the limitations periods of section 6511"); *Beydoun v. United States*, 969 F. Supp. 283, 285 n.5 (D. N.J. 1997) (*Brockamp* "pertains to all equitable exceptions, both estoppel and tolling"); *Thomasson v. United States*, No. C-96-3023, 1997 WL 220321, at *4 (N.D. Cal. Apr. 21, 1997) ("the *Brockamp* opinion imposed a blanket bar to non-statutory extensions of the limitations period in § 6511.").[3]

Moreover, the facts of this case do not justify application of the doctrine of estoppel, even if it were available. Equitable estoppel arises when:

>    (1)   the   party   to   be   estopped   made   a   'definite

---

[3] In an attempt to circumvent the application of *Brockamp* and its progeny, the Executor argues that the IRS' actions constituted an extension *within* the plain language of § 6511(b)(2)(A). Because I find that the IRS did not have the authority to grant a second extension of time, *see* Section III.A.2, I do not find this argument compelling.

> misrepresentation of fact to another person having reason
> to believe that the other [would] rely upon it'; (2) the
> party seeking estoppel relied on the misrepresentations
> to its detriment; and (3) the 'reliance [was] reasonable
> in that the party claiming the estoppel did not know nor
> should it have known that its adversary's conduct was
> misleading.

*Ramírez-Carlo v. United States*, 496 F.3d 41, 49 (1st Cir. 2007) (quoting *Heckler v. Cmty. Health Servs. of Crawford County, Inc.*, 467 U.S. 51, 59 (1984)) (alterations in original).  Because "the Government may not be estopped on the same terms as any other litigant," *Heckler*, 467 U.S. at 60, "[t]he Supreme Court has been very cautious in language, and even more cautious in practice, about extending estoppel to the government."  *Nagle v. Acton-Boxborough Reg'l Sch. Dist.*, 576 F.3d 1, 4 (1st Cir. 2009).  An illustration of this cautious approach is the requirement that the party asserting equitable estoppel against the government "must have reasonably relied on some 'affirmative misconduct' attributable to the sovereign."  *Frillz, Inc. v. Lader*, 104 F.3d 515, 518 (1st Cir. 1997) (quoting *United States v. Ven-Fuel, Inc.*, 758 F.2d 741, 761 (1st Cir. 1985)).  Affirmative misconduct means "an affirmative misrepresentation or affirmative concealment of a material fact by the government, although it does not require that the government intend to mislead a party."  *Ramírez-Carlo*, 496 F.3d at 49 (quoting *Watkins v. U.S. Army*, 875 F.2d 699, 707 (9th Cir. 1989) (en banc)).  No such misconduct is present here.

The Executor contends that the IRS, by its silence and failure to notify him of the denial of the second request for an extension, materially misrepresented that a second extension was granted, thereby demonstrating affirmative misconduct on the part of the IRS.  As evidence of this contention, the Executor purports to rely on the Internal Revenue Manual, which sets forth the procedure for denying taxpayers' requests for extension of time and provides the possibility for the IRS to send a letter to the taxpayer in case of denial.  *See* Internal Revenue Manual § 4.25.2.1.1.8 (2009).  However, because the purpose of the Manual is to govern internal affairs, it does not confer any legal rights upon taxpayers.  *See Olpin v. Comm'r*, 270 F.3d 1297, 1301 (10th Cir. 2001) ("Operating procedures of the IRS do not create rights in the taxpayer.").  The provisions contained therein "do not have the force and effect of law." *United States v. Horne*, 714 F.2d 206, 207 (1st Cir. 1983) (per curiam) (quoting *Einhorn v. DeWitt*, 618 F.2d 347, 350 (5th Cir. 1980)).  As a result, the IRS did not have an enforceable duty to notify the Executor of the denial of his second request for extension and the IRS' mere silence is not sufficient to constitute affirmative misconduct on its part.  *Cf. Dunkin' Donuts Inc. v. Panagakos*, 5 F. Supp. 2d 57, 62 (D. Mass. 1998) ("Although estoppel can be based on mere silence, that is true only where there is a duty to speak and the ensuing silence is wrongful [and] misleading.") (internal

quotation marks and citation omitted) (alteration in original). As further evidence of IRS' affirmative misconduct, the Executor claims that he never received any delinquency notices from the IRS.  The evidence contained in the record is disputed as to whether the IRS sent two separate delinquency notices to him on August 16 and October 11, 2004, indicating that the estate tax return was overdue.  In any event, the purported failure of receipt by the Executor does not establish a failure to send by the IRS.

Even viewing the evidence in the light most favorable to the Executor, no reasonable fact finder could find that the IRS engaged in an affirmative misconduct sufficient to constitute equitable estoppel.  This is particularly true where, as here, the IRS had no authority to grant the second extension.  This conclusion is aligned with the Supreme Court's instruction that "[t]o open the door to estoppel claims would only invite endless litigation over both real and imagined claims of misinformation by disgruntled citizens, imposing an unpredictable drain on the public fisc." *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 433 (1990).  It is also consistent with the First Circuit's repeated refusal to apply estoppel against the government in situations where a private party might otherwise have been estopped.  *See e.g., Nagle*, 576 F.3d at 6; *Frillz*, 104 F.3d at

518; *Ven-Fuel, Inc.*, 758 F.2d at 761; *but see Ramírez-Carlo*, 496 F.3d at 50.

Having found that no genuine issue of material fact exists as to the Executor's claim for equitable estoppel, I grant summary judgment in favor the IRS as to Count II.

## IV. CONCLUSION

For the reasons set forth more fully above, I GRANT the IRS' motion for summary judgment [Dkt. No. 24] and DENY the Executor's motion for partial summary judgment as to Count I [Dkt. No. 35].


/s/ Douglas P. Woodlock
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE